

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

June 22, 2021

**BY ECF**

The Honorable Roslynn R. Mauskopf
U.S. District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201

      Re:   *SEC v. William Scott Lawler and Natalie Bannister,*
              19-cv-4025 (RRM) (TM)

Dear Judge Mauskopf:

    Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this letter to seek the Court's approval for the proposed consent judgment that the Commission and Defendant William Scott Lawler have agreed upon. If approved, the proposed judgment—which would impose an injunction, disgorgement, prejudgment interest, and a civil monetary penalty and would order that the disgorged funds be sent to the U.S. Treasury—would fully resolve the Commission's claims against Lawler.[1]

**I.    The Complaint's Relevant Allegations**

    The Complaint alleges that Lawler, an experienced attorney, engaged in illegal offers and sales of shares of three different microcap companies. Lawler and his co-defendant Bannister participated in a deceptive scheme, from August 2015 through March 2016, that resulted in the unlawful, unregistered sales of millions of shares of Broke Out, Inc. ("BRKO"), a public company, to the investing public. Lawler participated in a similar scheme, from February 2015 through April 2017, involving another public company, Immage Biotherapeutics Corp. ("IMMG"). Lawler also manipulatively traded the shares of a third public company, Nami Corp. ("NINK"), from December 2016 through January 2018.[2] Complaint ¶¶ 1-9.

    BRKO and IMMG were shell companies, with no or nominal operations and assets. The purpose of the BRKO and IMMG schemes was to transfer control of these shell companies through the sale of these companies' stock to Lawler's client Peter Liu and his group (collectively "Liu's Group") so that they could resell shares to the public without the required registration. Complaint ¶¶ 19-21, 33-41.

    Lawler directed Bannister (for BRKO) and another individual (for IMMG) to feign ownership of shares of the company in order to accomplish the scheme. Complaint ¶¶ 42-185.

---

[1] The SEC is simultaneously submitting a proposed consent Judgment as to Defendant Natalie Bannister ("Bannister"), along with a separate letter seeking the Court's approval.

[2] As part of his Consent, Lawler neither admits nor denies the allegations in the Complaint.

Hon. Roslynn R. Mauskopf
June 22, 2021
Page 2

Lawler also provided false legal opinion letters to the broker-dealers, opining that the transferred shares were "freely trading" when they were not, to deceive the broker-dealers into accepting deposit of those shares, a crucial step in the resale of those shares without registration. The purchasers of those shares were deprived of the information that would have been provided in a registration statement, including that control persons of the issuer were dumping the stock. The Liu Group reaped approximately $1.3 million in illegal profits through their sales of BRKO shares before the Commission suspended trading on March 17, 2016, and approximately $1.9 million in illegal profits through their sales of IMMG shares before the Commission suspended trading on April 4, 2017. Complaint ¶¶ 111-128; 179-185.

Finally, Lawler engaged in several types of manipulative trading, including a series of coordinated, matched trades in the stock of NINK to create the appearance of an active market and raise the price of NINK shares. Complaint ¶¶ 186-195.

## II. The Court Should Approve the Proposed Consent Judgment.

The proposed consent judgment is fair and reasonable and does not disserve the public interest, under *SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285 (2d Cir. 2014). As reflected in the attached Consent and proposed Judgment, Lawler agrees to entry of a Judgment that would permanently enjoin him from violations of Sections 5 and 17(a) of the Securities Act of 1933 [15 U.S.C. §§ 77e and 77q(a)], Sections 9(a) and 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78i(a)(1) and 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. The proposed Judgment would also order Lawler to disgorge $186,594, which represents the amount of ill-gotten gains he personally received; pay prejudgment interest thereon in the amount of $13,602.15; and pay a civil penalty of $186,594, a penalty equal to the amount of Lawler's ill-gotten gains. The proposed Judgment would also permanently bar Lawler from participating in any offering of penny stocks.[3]

The proposed Judgment would further order that the disgorged funds be sent to the U.S. Treasury and would include a finding that this is consistent with equitable principles. Disgorged funds may be sent to the Treasury consistent with Section 21(d)(7) of the Exchange Act and *Liu v. SEC*, 140 S. Ct. 1936, 1949, when doing so is "consistent with equitable principles," as is the case here.[4] While the SEC endeavors to distribute disgorged funds to harmed investors when

---

[3] As a separate part of his settlement with the Commission, Lawler has also consented to the entry of an order in a Commission administrative proceeding suspending him from appearing or practicing before the Commission as an attorney.

[4] *Liu* reasoned that the phrase "for the benefit of investors" in Exchange Act Section 21(d)(5) "restricts" the equitable relief that may be awarded under that provision, but the decision left as an "open question" whether "depositing disgorgement funds with the Treasury may be justified where it is infeasible to distribute the collected funds to investors." *Liu,* 140 S. Ct. at 1948. Congress's omission of the "for the benefit of investors" restriction in Exchange Act Section 21(d)(7), combined with Congress's description of disgorgement as a remedy aimed at preventing "unjust enrichment" in Section 21(d)(3)(A)(ii), evinces a congressional intent that courts be able to send disgorged funds to the Treasury where disgorgement is an appropriate equitable remedy for violations of the federal securities laws.

Hon. Roslynn R. Mauskopf
June 22, 2021
Page 3

feasible and practical, distribution of the proposed disgorgement amount from Lawler (and from Defendant Bannister) to harmed investors is not feasible or practical in this case, as described in more detail below.

A distribution of the proposed monetary relief to harmed investors is not feasible in this case. Many investors likely purchased shares of BRKO and IMMG because of Lawler's and Bannister's fraudulent schemes.[5] However, it would be prohibitively difficult for the SEC to determine which specific investors purchased shares on the open market as a result of the Defendants' fraud and the extent of such investors' individual harm. And the expense of a fund administrator—who may not even be able to determine which investors had been harmed—would swiftly deplete the value of any distribution fund for investors, even if the disgorgement amounts were combined with prejudgment interest and penalties.

Because distribution to harmed investors is not feasible, the only alternative consistent with equitable principles is to send the disgorged funds to the Treasury. Allowing Lawler to retain the funds would be inequitable. Lawler's conduct was egregious, he acted with a high level of scienter, and, although the harm to specific investors cannot be easily quantified, his fraudulent schemes caused considerable damage to the market and investors by causing millions of shares of unregistered penny stocks to be illegally sold on the open market.

Distribution to the Treasury here therefore serves the "foundational" principle of equity that no person should profit from his own wrongdoing. *Liu*, 140 S. Ct. at 1943, 1948. As between the violator and the Treasury, it is more equitable that collected funds be disbursed to the latter so as not to incentivize fraud. *See Kansas v. Nebraska*, 574 U.S. 445, 463 (2015) (equity supports ordering disgorgement to "remind [a violating party] of its legal obligations" and to "deter future breaches"); Restatement (First) of Restitution § 187 (1937) (discussing the constructive trust remedy that prevented a murderer from inheriting his victims' estates and made the murderer the constructive trustee for innocent persons who, but for the murder, would not have inherited the estate).

Further, equity recognizes that if, as in this case, distribution to a victim is not feasible, disgorged funds may be awarded to the *cy pres* (i.e., nearest possible) alternative. *Pearson v. Target Corp.*, 968 F.3d 827, 837 (7th Cir. 2020) (applying *Liu v. SEC*). And, in the securities laws, "Congress made payment to the Treasury the *cy pres* alternative … to payment to victims of fraud when payment to the victims is infeasible." *SEC v. Custable*, 796 F.3d 653, 656 (7th Cir. 2015); *see also Kansas*, 574 U.S. at 456 ("[W]hen federal law is at issue and the public interest is involved, a federal court's equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.").

---

[5] With respect to NINK, it is unclear if there were NINK investors who were harmed by Lawler's fraudulent trading. NINK was publicly traded but far less actively than BRKO and IMMG. Those in control of NINK appear to have been soliciting investors for private investments at the time Lawler was engaged in manipulative trading, but those investors do not appear to have generally purchased on the open market.

Hon. Roslynn R. Mauskopf
June 22, 2021
Page 4

      For these reasons, the Court should approve the proposed Final Judgment attached here and docket it together with Lawler's executed Consent, also attached here.

                                                          Respectfully submitted,

                                                          /s/ Kevin P. McGrath
                                                          Senior Trial Counsel
                                                          Securities and Exchange Commission

Encls.

cc:    Richard M. Nummi, Esq. (counsel for Bannister) (via ECF and email)
        Joseph L. Francouer, Esq. (counsel for Lawler) (via ECF and email)